UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONALD LEE HALLBACK,

    Plaintiff,

v.                                         CASE NO. 8:20-cv-475-TGW

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

_____

ORDER

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff does not identify any reversible error, the decision will be affirmed.

I.

The plaintiff, who was fifty-nine years old at the time of the administrative hearing and who has an eleventh grade education (Tr. 82), has

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 17).

worked pertinently as an automobile salesman. He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to mental conditions (Tr. 334). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "major depressive disorder; anxiety disorder; panic disorder; schizophrenia and other psychotic spectrum disorders" (Tr. 38). He concluded that, with these impairments, the plaintiff (Tr. 41)

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant is able to understand, carry out, and remember simple, routine, and repetitive tasks; involving only simple, work-related decisions with the ability to adapt to routine work place changes. The claimant could tolerate no interaction with the general public.

The law judge determined further that with those limitations the plaintiff was unable to perform any past relevant work (Tr. 49). However, based upon the testimony of a vocational expert, he found that jobs existed in significant numbers in the national economy that the plaintiff could perform, such as

Cleaner II, Crate Liner, and Laundry Worker I (Tr. 50). Accordingly, the law judge determined that the plaintiff was not disabled (Tr. 51).

The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole

contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff asserts that "the Commissioner failed to fully and adequately consider and evaluate the medical evidence" and, relatedly, "did not provide a comprehensive question to the vocational expert" (Doc. 19, p. 2). More specifically, the plaintiff asserts that the law judge did not properly evaluate the opinions by a consulting psychologist that the plaintiff was moderately limited in interacting appropriately with supervisors and coworkers and include related limitations in the hypothetical question to the vocational expert. This contention fails, however, because the law judge expressly considered those opinions and gave a reasonable explanation for discounting them.

After the administrative hearing, the law judge had the plaintiff undergo a consultative psychological examination, which was performed by

Zachary Isoma, Psy.D. (Tr. 776). Dr. Isoma stated the following impressions (Tr. 779):

> The claimant will be diagnosed with Major Depressive Disorder, Recurrent, Moderate, Panic Disorder, and Rule out Schizophrenia Spectrum and Other Psychotic Disorders. He described multiple episodes of depressive symptoms, which are characterized by frequent feelings of sadness, rumination, and brooding. He also described depressive symptoms to include lack of motivation, loss of energy, fatigue, and lethargy. In addition, he endorsed panic like symptoms, including the sense of going "crazy," rapid heartbeat, trembling, racing thoughts, and an urgency to escape the environment. Available records indicate he was previously diagnosed with Rule out Schizophrenia Spectrum and Other Psychotic Disorders. However, his description of paranoid thinking patterns included symptoms more consistent with panic than with symptoms of psychosis. Therefore, further evaluation, including reality testing and symptom validity testing, is required prior to providing a substantial diagnosis.

In a recommendation, Dr. Isoma iterated that "[f]urther psychological evaluation, including personality testing, measures of adaptive functioning, and symptom validity testing, could help further substantiate his diagnoses" (id.).

Dr. Isoma made the following Medical Source Statement (id.):

> He will have moderate difficulty interacting with others both on-the-job and on a day-to-day basis. He will have moderate difficulty focusing and sustaining attention on complex tasks though he should be able to perform basic tasks and job duties adequately.

Dr. Isoma also filled out a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" (Tr. 782). As pertinent here, Dr. Isoma marked "Moderate" with respect to the plaintiff's ability to "Interact appropriately with the public"; "Interact appropriately with supervisor(s)"; and "Interact appropriately with co-workers" (Tr. 783).

The law judge assessed Dr. Isoma's report as follows (Tr. 48–49):

> Consultative evaluating psychologist Dr. Isoma indicated in his notes following the claimant's evaluation that the claimant would have moderate difficulty interacting with others both on the job and on a day-to-day basis; and moderate difficulty focusing and sustaining attention on complex tasks; though he believed the claimant should be able to perform basic tasks and job duties adequately. (Exhibit 15F) Dr. Isoma also completed a statement in which he indicated that

the claimant had moderate limitations in his ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions; and only mild limitations with respect to simple instructions and simple work-related decisions. He further indicated the claimant had moderate limitations in his ability to interact appropriately with the public, supervisors, and co-workers, and to respond to usual work situations and changes in a routine work setting. (Exhibit 16F) I find Dr. Isoma's assessment of the claimant's functioning to be persuasive. His findings are supported by his own mental status examination observations, which showed poor recall of recent and remote events, but note the claimant was able to spell the word "world" forward and backward, perform a serial three task, and complete simple math calculations; and that the claimant's judgment and insight were adequate, and there was no evidence of a formal thought disorder. (Exhibit 15F) This conclusion is further consistent with the rest of the record, which documents the claimant as generally being alert, oriented, attentive, and having fair judgment and insight. (e.g. Exhibits 9F, 14F) However, I do not find his conclusions as to the claimant's ability to interact with co-workers and supervisors to be as persuasive, as the record as a whole does not support that the claimant has had problems interacting with anyone other than family and past relationships. However, as a precaution given the claimant's anxiety, it is reasonable and consistent with the record to limit the claimant's interaction with the general public.

The plaintiff challenges the law judge's determination to discount Dr. Isoma's opinions that the plaintiff had moderate limitations in interacting with supervisors and coworkers. This challenge was not meaningfully supported. As indicated under the substantial evidence test, findings of fact may be reversed only when the evidence compels a reversal. Adefemi v. Ashcraft, supra. The only citation to the record on this point (Doc. 19, p. 9) was to the following testimony of the plaintiff (Tr. 86, 88), which the law judge discounted because it was not entirely consistent with the evidence (Tr. 47):

> Q: ... How did [your anxiety] affect your interaction with your coworkers?
>
> A: Well, just very distant. They wouldn't say anything. They'd shy away from everything and everybody because I was just going through so much mentally.
>
> ...
>
> Q: Did you ever lash out at any customers or coworkers?
>
> A: No. I had a laid-back personality. I never lashed out.

These lone citations to the plaintiff's own testimony certainly do not compel a finding that the plaintiff had moderate limitations in interacting with supervisors or coworkers.

The plaintiff suggests that it is anomalous for the law judge to conclude that the plaintiff had a limitation in dealing with the public, but not with supervisors and coworkers. However, the law judge could reasonably conclude that the plaintiff's anxiety would make it more difficult for the plaintiff to interact with the general public than with people he knew and worked with. Moreover, the law judge said he was imposing a limitation on dealing with the public "as a precaution." Thus, the fact that the law judge may have been generous in considering the plaintiff's interaction with the public does not show that the law judge erred in his assessment regarding interactions with coworkers and supervisors.

Accordingly, under the standards for assessing medical opinions that the plaintiff mistakenly thought were still controlling, the plaintiff's challenge would fail. Thus, the law judge specifically considered the opinions the plaintiff relies upon and provided a reasonable basis for discounting them. Further, the opinions were made by a one-time

examining psychologist. Also, the particular opinions were conclusory since they were simply marks on a form.

However, as the Commissioner points out, the regulations governing medical opinions have been changed and they seem to reflect that greater deference should be afforded to assessments by law judges of medical opinions.

This case was decided under new regulations governing the assessment of medical opinion evidence. See 20 C.F.R. 404.1520c, 416.920c. Those regulations change established principles in the Eleventh Circuit concerning the evaluation of medical opinions.

> Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision. As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us.

Revision to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017).

Accordingly, the regulations now state (20 C.F.R. 404.1520c(a), 416.920c(a)):

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

Rather, medical opinions and prior administrative medical findings are to be considered for their persuasiveness based upon the following factors:

(1) Supportability
(2) Consistency
(3) Relationship with the claimant [including]
  (i) Length of the treatment relationship
  (ii) Frequency of examinations
  (iii) Purpose of the treatment relationship
  (iv) Extent of the treatment relationship
  (v) Examining relationship
(4) Specialization
(5) Other factors

20 C.F.R. 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

Supportability and consistency are the two most important factors. 20 C.F.R. 404.1520c(a), 416.920c(a); 20 C.F.R. 404.1520c(b)(2), 416.920c(b)(2). Indeed, law judges are not even required to explain how

they considered factors 3 through 5, 20 C.F.R. 404.1520c(b)(2), 416.920c(b)(2), unless the record contains differing, but equally persuasive, medical opinions or prior administrative medical findings about the same issue. 20 C.F.R. 404.1520c(b)(3), 416.920c(b)(3).

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(1), 416.920c(c)(1).

"Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(2), 416.920c(c)(2).

The new regulations also provide that where the record contains multiple medical opinions or prior administrative medical findings from a single medical source, the law judges are not required to articulate how they

considered each medical opinion or prior administrative medical finding, but it is sufficient if there is a single analysis of the factors. 20 C.F.R. 404.1520c(b)(1), 416.920c(b)(1).

The plaintiff did not acknowledge the changes due to the new regulations. Therefore, he obviously did not state any challenges to, or interpretations of, the new regulations. Consequently, there is no basis for concluding that the law judge contravened the new regulations when he discounted Dr. Isoma's opinion that the plaintiff had moderate limitations in interacting with coworkers and supervisors.

The plaintiff contends, relatedly, that the law judge failed to pose a hypothetical question to the vocational expert that included all of the plaintiff's impairments. Specifically, the plaintiff complains that "the question of interactions with coworkers and supervisors was never raised with the vocational expert" (Doc. 19, p. 10).

This complaint falls with the rejection of the prior contention. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Ingram v. Commissioner of Social Security

Administration, 496 F.3d 1253, 1270 (11th Cir. 2007). However, the law judge is not required to include restrictions in the hypothetical question that he properly finds are unsupported. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004). Since the law judge properly rejected limitations on interacting with coworkers and supervisors, as previously explained, he did not have to include any such limitations in the hypothetical question.

The plaintiff points out that after the receipt of Dr. Isoma's report, there was no further interaction with the vocational expert (Doc. 19, p. 8). However, since the law judge accepted most of Dr. Isoma's report, and properly rejected Dr. Isoma's opinions regarding coworkers and supervisors, there was no need for further interactions with the vocational expert. Moreover, the plaintiff was represented by counsel at the hearing, and if the attorney thought that the plaintiff had a plausible claim of limitations with coworkers and supervisors, he could have asked the vocational expert about those matters. Thus, under these circumstances, there is not a basis for thinking that the hypothetical question was deficient.

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 4th day of May, 2021.

*/s/ Thomas G. Wilson*
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE